UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARIANA DURDACH, | : | CIVIL NO: 3:20-CV-00926 |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| v. | : | |
| LM GENERAL INSURANCE COMPANY, | : | |
| Defendant. | : | |

# MEMORANDUM OPINION

## I. Introduction.

In this case, an insured is suing her insurance company for breach of contract and bad faith in connection with an uninsured motorist claim. Because the allegations in the complaint regarding the bad faith claim are conclusory, we will grant the insurance company's motion to dismiss the bad faith claim. We will, however, grant the insured leave to file a second amended complaint.

## II. Background and Procedural History.

Plaintiff Dariana Durdach began this action by filing a complaint against defendant Liberty Mutual Insurance in the Court of Common Pleas of Wayne County, Pennsylvania. The defendant removed the case to this court on the basis diversity jurisdiction pursuant to 28 U.S.C. §1332. Although Durdach filed a

motion to remand this case to the state court based on a forum-selection clause in the insurance contract, she later withdrew that motion to remand.

After the case was removed to this court, Durdach filed an amended complaint. She again named Liberty Mutual Insurance as the defendant, but the parties subsequently stipulated that the proper defendant is LM General Insurance Company, and LM General Insurance Company was substituted as the defendant.

Durdach alleges that on October 10, 2017, while she was driving in Honesdale, Pennsylvania, another vehicle violently struck the rear of her vehicle. *Doc. 10* at ¶¶ 8–10. As a result, Durdach was thrown about the interior of her vehicle, and she hit her head on the steering wheel and headrest. *Id*. at ¶ 14. At the time of the accident, Durdach was 18 years old. *Id*. at ¶ 9. She contends that she sustained serious and permanent injuries. *Id*. at ¶ 14. The driver of the other vehicle was uninsured and was cited for careless driving and driving with a suspended license. *Id*. at ¶ 13.

On November 1, 2017, Durdach saw Paul Horchos, D.O, who diagnosed her with "post-concussive symptomatology resulting in difficulties with regards to visual performance for reading and visual processing." *Id*. at ¶ 15. Durdach began a course of physical therapy. *Id*.

At the time of the accident, Durdach was insured by the defendant, and she had underinsured/uninsured motorist coverage in the amount of $100,000. *Id*. at

2

¶¶ 6, 35–36.  On October 3, 2019, Durdach placed the defendant on notice that she was making an underinsured/uninsured motorist claim, and on January 23, 2020, she forwarded additional records to the defendant for review regarding that claim. *Id*. at ¶¶ 16–17.  Durdach's counsel had discussions with Allison Feldbauer of defendant's claims departments. *Id*. at ¶ 19.  Feldbauer was aware the Durdach was 18 years old at the time of the accident, that she was continuing to suffer from visual impairment and post-traumatic headaches, among other injuries, from the closed head trauma she suffered in the accident. *Id*. at ¶ 21.  On February 6, 2020, the defendant offered $11,300 to settle the claim. *Id*. at ¶ 20.

  Durdach alleges that the defendant refused to make a good faith attempt to reasonably settle her claim. *Id*. at ¶ 22.  According to Durdach, "[t]here was no reasonable basis for the denial of this claim and such denial recklessly disregards [her] statutory and contractual rights." *Id.* at ¶ 23.  Durdach alleges that pursuant to the insurance policy, she demanded underinsured/uninsured benefits, but the defendant has failed to present her with a reasonable offer to settle her claim. *Id*. at ¶¶ 18, 28–29.  Thus, the parties have not agreed on an amount of damages recoverable. *Id*. at ¶ 29.

  Durdach alleges that because of the accident, she has been and may in the future be required to spend money for medical treatment. *Id*. at ¶ 24.  She also alleges that she "has and will continue to have great mental anguish, physical

injuries and physical pain as a result of which she has suffered and will continue to suffer for an indefinite period of time in the future." *Id*. at ¶ 25. And she "has suffered in her school work and daily living activities." *Id*. at ¶ 26. She also contends that as a result of the accident, she has suffered:

    a. post-concussive symptomatology;

    b. closed head trauma;

    c. post-traumatic headaches;

    d. chronic recurrent headaches;

    e. migraines;

    f. whiplash;

    g. cervical etiology;

    h. left cervical paraspinal muscle tightness;

    i. neck sprain and strain;

    j. left side discomfort;

    k. cervicalgia;

    l. neck stiffness;

    m. visual impairment;

    n. cognitive impairment;

    o. difficulty reading;

    p. difficulty focusing;

q. difficulty concentrating;

r. difficulty grasping tasks;

s. double vision;

t. eye strain;

u. dizziness;

v. visual discomfort;

w. blurred vision;

x. nausea;

y. gait and balance issues;

z. weakness;

aa. fatigue;

bb. the need for physical therapy;

cc. academic modification/accommodations;

dd. impaired ability to perform school work;

ee. limitations restricting leisure participation;

ff. need for medication;

gg. limited sports activity;

hh. pain with extended activity;

ii. smooth pursuit movement deficiency;

jj. difficulty with visual tracking;

kk. difficulty with gaze stabilization activities;

ll. poor eye convergence;

mm. past and future pain and suffering;

nn. future economic damages;

oo. future lost income;

pp. past and future mental anguish;

qq. embarrassment;

rr. disfigurement;

ss. loss of life's pleasures;

tt. accidental expenses;

uu. property damage;

vv. other injuries recorded and described in the medical records; and

ww. past and future medical and other expenses which have or may exceed the sum recoverable under the limitations set forth in the Pennsylvania Motor Vehicle Act.

*Id.* at ¶ 33.

The amended complaint contains two counts. Count I is a claim for breach of the insurance contract. Count II is a claim for bad faith under 42 Pa. C.S.A. § 8371.

The defendant filed a motion to dismiss Count II, the bad faith claim. After that motion had been fully briefed, the parties consented to proceed before a

magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. For the reasons discussed below, we will grant the defendant's motion to dismiss the bad faith claim. We will also grant Durdach leave to file a second amended complaint.

### III. Motion-to-Dismiss Standards.

In accordance with Fed. R. Civ. P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted." When reviewing a motion to dismiss under Rule 12(b)(6), "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769–70 (M.D. Pa. 2012). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the

7

claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). The statement required by Rule 8(a)(2) must give the defendant fair notice of the nature of the plaintiff's claim and of the grounds upon which the claim rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than "labels," "conclusions," or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "A complaint has to 'show' such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court "'must accept all facts alleged in the complaint as true and construe the complaint in the light most favorable to the nonmoving party.'" *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 437 (3d Cir. 2018) (quoting *Flora v. Cty. of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015)). But a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). A court also need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

8

Following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Tp.,* 629 F.3d 121, 130 (3d Cir. 2010) (footnote and citations omitted) (quoting *Iqbal,* 556 U.S. at 675, 679).

**IV. Discussion.**

The defendant contends that the amended complaint fails to state a bad faith claim upon which relief can be granted because Durdach's allegations regarding bad faith are conclusory. "A complaint does not state a bad faith claim upon which relief can be granted where the bad faith claim is based only on 'bare-bones conclusory allegations' of bad faith." *Kline v. Progressive Corp.*, No. 1:19-CV-00676, 2019 WL 6875601, at *2 (M.D. Pa. Dec. 17, 2019) (quoting *Meyers v. Protective Ins. Co.*, No. 3:16-CV-01821, 2017 WL 386644, at *9 (M.D. Pa. Jan.

9

27, 2017)). And "[d]istrict courts in this circuit 'have routinely dismissed bad faith claims reciting only "bare-bones" conclusory allegations unsupported by facts sufficient to raise the claims to a level of plausibility.'" *Satterfield v. Gov't Ins. Employees Co.*, No. CV 20-1400, 2020 WL 7229763, at *2 (E.D. Pa. Dec. 8, 2020) (citing cases) (quoting *Elican v. Allstate Ins. Co.*, No. CV 17-03105, 2017 WL 6525781, at *4 (E.D. Pa. Dec. 21, 2017). Here, we conclude that Durdach's allegations regarding bad faith are conclusory and fail to state a claim upon which relief can be granted.

Pennsylvania's Bad Faith Statute, 42 Pa. C.S.A. § 8371, which establishes a private cause of action against an insurer that has acted in bad faith toward its insured, provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

Although § 8371 does not define "bad faith," "the Superior Court's longstanding two-pronged test, first articulated in *Terletsky*," is the "appropriate framework for analyzing bad faith claims under Section 8371." *Rancosky v.*

*Washington Nat'l Ins. Co.*, 170 A.3d 364, 372, 376 (Pa. 2017) (citing *Terletsky v. Prudential Property and Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994)). "To prevail in a bad faith insurance claim pursuant to Section 8371, a plaintiff must demonstrate, by clear and convincing evidence, (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim." *Id*. at 377.

The first prong of the test for bad faith "is an objective inquiry into whether a reasonable insurer would have denied payment of the claim under the facts and circumstances presented." *Id*. at 374. Bad faith is not, however, limited to an outright denial of a claim. Rather, Section 8371 "has been interpreted to cover a range of insurer conduct[,]" including an insurer's lack of a good faith investigation, failure to communicate with the insured, and delay in handling the insured's claim. *White v. Travelers Ins. Co.*, No. CV 20-2928, 2020 WL 7181217, at *4 (E.D. Pa. Dec. 7, 2020).

The second prong of the test for bad faith requires more than "mere negligence or bad judgment[.]" *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 523 (3d Cir. 2012). Rather, "knowledge or reckless disregard of a lack of a basis for denial of coverage is necessary." *Id*. But "proof of the insurer's subjective motive of self-interest or ill-will, while perhaps probative of the second prong of

11

the above test, is not a necessary prerequisite to succeeding in a bad faith claim." *Rancosky*, 170 A.3d at 377.  Instead, "proof of the insurer's knowledge or reckless disregard for its lack of reasonable basis in denying the claim is sufficient for demonstrating bad faith under the second prong." *Id*.

Here, the amended complaint contains mostly conclusory statements that are not supported by factual allegations.  For example, Durdach alleges that the defendant acted in bad faith by:

    a.  unreasonably delay[ing] the processing of a valid claim;

    b.  kn[owingly] or recklessly disregard[ing] the fact that the delay was unreasonable;

    c.  failing to objectively and fairly evaluate Plaintiff's claim;

    d.  engaging in dilatory and abusive claims handling;

    e.  failing to adopt or implement reasonable standards in evaluating Plaintiff's claim;

    f.  acting unreasonably and unfairly in response to Plaintiff's claim;

    g.  not attempting in good faith to effectuate a fair, prompt, and equitable settlement of Plaintiff's claim in which the Defendant's liability under the policy had become reasonably clear;

    h.  subordinating the interests of its insured and those entitled under its insured's coverage to its own financial monetary interests;

    i.  failing to promptly offer reasonable payment to the Plaintiff;

    j.  failing to reasonably and adequately investigate Plaintiff's claim;

    k. failing to reasonably and adequately evaluate or review the medical documentation in Defendant's possession;

    l. violating the fiduciary duty owed to the Plaintiff;

    m. acting unreasonably and unfairly by withholding underinsured motorist benefits justly due and owing to the Plaintiff;

    n. failing to make an honest, intelligent, and objective settlement offer;

    o. causing Plaintiff to expend money on the presentation of her claim; and

    p. failing to make a reasonable settlement offer despite knowing the severity of a visual injury and post-traumatic headaches in an 18-year old.

*Doc. 10* at ¶ 46. Durdach also alleges that the defendant failed to act in good faith and "engaged in wanton and reckless conduct . . . ." *Id.* at ¶¶ 49–50.

    Although long, Durdach's list of how the defendant allegedly acted in bad faith contains conclusions, rather than facts. *See Peters v. GEICO Advantage Ins. Co.*, No. 19-CV-1119, 2019 WL 3816929, at *3 (M.D. Pa. Aug. 14, 2019) (concluding that similar allegations were conclusory); *Rickell v. USAA Cas. Ins. Co.*, No. 1:18-CV-1279, 2018 WL 5809865, at *3 (M.D. Pa. Nov. 6, 2018) (same); *see also Smith v. State Farm Mut. Auto. Ins. Co.*, 506 F. App'x 133, 136 (3d Cir. 2012) (affirming dismissal of bad faith claim and finding the following allegations to be conclusory: the defendant "breach[ed] covenants of good faith and fair dealing," "engag[ed] in unfair settlement negotiations," "intentionally misrepresent[ed] coverage in the policy," "misrepresent[ed] facts and its evaluation

13

of Plaintiff's claim," "fail[ed] to properly investigate [her UIM claim]," and "fail[ed] to timely respond to inquiries and correspondence"); *Meyers*, 2017 WL 386644, at *9 (dismissing bad faith claim based on conclusory allegations including, among many others, "that the claim was not timely paid and investigated," that the defendant failed to "act in good faith and with fair dealing toward its insured," and that the defendants refused to negotiate in good faith); *Sypeck v. State Farm Mut. Auto Ins. Co.,* Civil Action No. 3:12-CV-324, 2012 WL 2239730 at *3 (M.D. Pa. June 15, 2012) (dismissing bad faith claim that was supported by conclusory allegations and boilerplate language including, among others, allegations about the defendant "failing to objectively and fairly evaluate Plaintiff's claim," "failing to adopt and/or implement reasonable standards in evaluating Plaintiff's claim," and "[n]ot attempting in good faith to effectuate a fair, prompt and equitable settlement of Plaintiff's claim in which Defendant's liability under the policy had become reasonably clear"); *Muth v. State Farm Fire & Cas. Co.*, Civil No. 1:CV-10-1487, 2010 WL 3805386 (M.D. Pa. Sept. 22, 2010) (characterizing as conclusory allegations that the defendant "lacked a reasonable basis for denying" the claim, "intentionally or recklessly disregarded the reasonable basis for the claim," failed "to conduct a reasonable and fair investigation of the claim," failed "to attempt to come to a fair and reasonable settlement of the claim when liability is clear," failed to "promptly provide a

reasonable explanation for denial of the claim," and failed "to specifically detail evidence of [the] reason to deny [the] claim"). Durdach's conclusory allegations are not entitled to an assumption of truth and may be disregarded as legal conclusions. *See Santiago,* 629 F.3d at 130 (explaining that the court should identify allegations that are merely conclusions, should not assume that such conclusions are true, and may disregard such conclusions).

Thus, we turn to the allegations that are factual, rather than conclusory. Durdach alleges that on November 1, 2017, she saw Paul Horchos, D.O, who diagnosed her with "post-concussive symptomatology resulting in difficulties with regards to visual performance for reading and visual processing." *Doc. 10* at ¶ 15. She began a course of physical therapy. *Id*. Durdach also alleges that on October 3, 2019, she placed the defendant on notice that she was making an underinsured/uninsured motorist claim, and on January 23, 2020, she forwarded additional records to the defendant for review regarding that claim. *Id*. at ¶¶ 16–17. Durdach's counsel had discussions with Allison Feldbauer of defendant's claims departments. *Id*. at ¶ 19. Feldbauer was aware the Durdach was 18 years old at the time of the accident, that she was continuing to suffer from visual impairment and post-traumatic headaches, among other injuries,[1] from the closed head trauma she

---

[1] Durdach does not allege of what other injuries the defendant was aware. And although she lists a host of injuries and damages in Paragraph 33 of her complaint, *see doc. 10* at ¶ 33, she does not allege that the defendant was aware of those

suffered in the accident. *Id.* at ¶ 21.  On February 6, 2020, the defendant offered $11,300 to settle the claim. *Id.* at ¶ 20.

These factual allegations, however, are not enough to state a bad faith claim upon which relief can be granted.  Although Durdach disagrees with the value that the defendant placed on her claim, she has not pled facts to support an inference that the defendant did not have a reasonable basis for its settlement offer or that the defendant knew or recklessly disregarded any lack of a reasonable basis for such an offer.

"'Bad faith is not present merely because an insurer makes a low but reasonable estimate of an insured's damages.'" *Smith,* 506 F. App'x at 136 (quoting *Johnson v. Progressive Ins. Co.,* 987 A.2d 781, 784 (Pa. Super. Ct. 2009)); *see also Clarke v. Liberty Mut. Ins. Co.*, No. 3:18-CV-1925, 2019 WL 522473, at *6 (M.D. Pa. Feb. 11, 2019) ("A 'low-ball' offer alone does not suffice to support a claim for bad faith.").  "Indeed, courts have consistently held that a dispute or discrepancy in the valuation of a claim between the insurer and the insured is not alone indicative of bad faith." *Moran v. United Servs. Auto. Ass'n*, No. 3:18-CV-2085, 2019 WL 626440, at *4 (M.D. Pa. Feb. 14, 2019) (citing cases).  Thus, without additional factual allegations, an allegation that the

---

injuries and damages.  She also does not allege the severity of those injuries, how long those injuries continued or were expected to continue, or any estimate of the amount of her damages.

16

defendant acted unreasonably in valuing a claim does not state a bad faith claim upon which relief can be granted. *Clarke,* 2019 WL 522473, at *5. "Further, insofar as Plaintiff[] suggest[s] bad faith conduct by Defendants based on [its] refusal to tender the limits of the Policy, 'the failure to immediately accede to a demand for the policy limit cannot, without more, amount to bad faith.'" *Id.* (quoting *Smith*, 506 F. App'x at 137).

Here, Durdach has not pled facts to support anything other than a dispute over the value of her claim. But a dispute over the value of a claim is not unusual. See *Dietz v. Liberty Mut. Ins. Co.*, No. 2:20-CV-1239-MMB, 2020 WL 3414660, at *4 (E.D. Pa. June 22, 2020) ("A disagreement over the amount of a UIM claim is not unusual, and the existence of such disagreement cannot by itself state a viable bad faith claim."); *Johnson*, 987 A.2d at 785 ("The underlying facts involve nothing more than a normal dispute between an insured and insurer over the value of an UIM claim."). And Durdach has not alleged facts from which it can plausibly be inferred that the defendant's offer "was unreasonable and made in bad faith, 'rather than made as part of the ordinary course of negotiations between insurers and insureds.'" *Rosenthal v. Am. States Ins. Co.*, No. 1:18-CV-01755, 2019 WL 1354141, at *5 (M.D. Pa. Mar. 26, 2019) (footnote omitted) (quoting *Clarke*, 2019 WL 522473, at *6)). Thus, the amended complaint fails to state a bad faith claim upon which relief can be granted.

"Although the court is not required to grant a plaintiff leave to amend in a non-civil rights case, *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 253 (3d Cir. 2007), courts in this district have routinely done so in cases like this one where a plaintiff's bad faith claim is dismissed for failure to state a claim upon which relief could be granted." *Kline*, 2019 WL 6875601, at *3. Thus, we will grant Durdach leave to file a second amended complaint to attempt, if appropriate, to state a bad faith claim upon which relief can be granted.

## V.   Summary.

For the foregoing reasons, we will grant the defendant's motion (*doc. 13*) to dismiss the bad faith claim (Count II of the amended complaint), and we will grant Durdach leave to file a second amended complaint.  An appropriate order will be issued.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge